We'll turn to our fourth case of the morning, which is Anderson v. United Airlines, appeal number 241626. And we welcome to the podium Mr. Green. May it please the court, good morning your honors, my name is Andrew Green on behalf of Thomas Anderson and 27 other former United Airlines employees that were affected by the COVID-19 vaccine mandate. Here today we're seeking to overturn the district court's order denying motion for leave to amend and dismissing the plaintiff's claims with prejudice. Today with such limited time, we did have 12 claims for relief. I would like to discuss five main issues that United defends themselves on. First, although the FDCA does not explicitly allow for private right of action, one may be implied. Second, to get this implicit private right of action when there's a due process violation, as there was here, the infringement on the fundamental right to refuse unwanted medical treatment, you can have a cause of action. Third, United is not immune from constitutional claims just because they're not a state actor in the traditional sense. They were so entwined with the federal government, thus subjecting them to liability. Fourth, the failure to exhaust administrative remedies, again in the traditional sense, does not bar all of plaintiff's claims. Fifth and finally, the district court had adopted the wrong standard for plaintiff's Title VII failure to accommodate claims. Under Title VII, disparate treatment is not treated the same, which this court has held, as disparate impact claims. As United repeatedly cites that the FDCA does not explicitly create a private right of action, the private right of action may be implicit once fundamental rights, such as the fundamental right to refuse unwanted medical treatment, is infringed upon. So there are two avenues, which we argued in our brief, which we show a due process violation. And as the Supreme Court already held in Bivens, which we state on page 17 of our reply brief, a private right of action may be implied when there's a due process violation. First, the fundamental right to refuse unwanted medical treatment, as well as the infringement on, or sorry, an equal protection clause violation. We discussed this on page 15 and 18, Cruzon, of our initial brief, as well as page 17 of our reply brief. Cruzon held that the principle of a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment, and that may be inferred from the Supreme Court's prior decisions. Cruzon also cites to Jacobson, which is repeated throughout every COVID-19 case practically, and a series of later cases which support the recognition of a general liberty interest in refusing unwanted medical treatment. United also cites to Washington v. Glucksburg, decided seven years after Cruzon, which the Supreme Court held in 1997, which explained that the right of a competent individual in refusing unwanted medical treatment was entirely consistent with the nation's history and constitutional traditions in light of the common law rule that a common law, if you force medication on someone, you are subject to a battery claim, and there is a long legal tradition protecting the decision of the refusal of unwanted medical treatment. The case law clarifies that compulsory treatment for the health benefit of the person treated implicates the fundamental right to refuse medical treatment. At the time of the issuance of United's policies with the COVID vaccines, there was a lot of unknown in the world. At first, you know, we didn't know about boosters, we didn't know about the efficiency of the vaccines themselves, we didn't know how the vaccine would affect transmission to other individuals, we didn't even know how beneficial it was to the individual getting the vaccine. Moving on to the second issue was the equal protection violation. When there's an equal protection violation, you may implicate a private right of action, which we discuss on page 18 of our reply brief. And so that one would be waived, right? If you raise it for the first time in reply? Correct, Your Honor. So let's move to the next one. Yes, Your Honor. So the second defense that United cites to, that they claim immunity, is because they're not a state act in the traditional sense. Now this court has held in Hanania v. Lauren Maltese, pardon me if I mispronounced it, that a private individual acts under the color of law if there was a concerted effort between the individual and the state actor. Now discovery is needed to further clarify and clear up the relationship between United and the federal government. But what is shown is they both shared in the unconstitutional goal of global vaccination. On our, in our second amendment complaint at paragraph 184, we even stated that there was a clear relationship. In April of 2020, the federal government, through the United States Treasury Department, gave United Airlines $5 billion in exchange for approximately 4.6 million shares of United Airlines stock. Given such a substantial influence over United, they could clearly influence their policies and mandates. United also states in their brief that private actors are not beyond the reach of 42 U.S.C. in 1983, acting under color of law. In our second amendment complaint, paragraph 314, we specifically allege that United conspired with government officials to achieve the Biden administration's goal of universal vaccination. Again, the government paid for and funded all the COVID-19 vaccines, and then United mandated that every single one of their employees get the vaccine. They shared this common goal of universal vaccination. Essentially what they're saying is, get the jab or lose your job. Now the defendants cite to Jacobson, like I previously mentioned, is cited in basically every COVID-19 vaccine case. There needs to be some transparency about how the two cases are different. Jacobson is a hundred year old case and involved a smallpox vaccine that was not issued through the EUA. The EUA allows the issuance of a vaccine before every necessary protocol and step is taken to assure its safety and efficiency. So in Jacobson, you had the smallpox vaccine issued not pursuant to the EUA, but through regular protocols. The penalty that the Commonwealth of Massachusetts assigned to individuals that did not receive the smallpox vaccine was a forfeiture of $5. It's not lose your job, not lose your livelihood, which my clients suffer here. The COVID vaccine here was issued pursuant to the EUA. It didn't go through every single necessary protocol. Maybe we should move forward if we're not going to, because there was a finding that this argument had been forfeited. And in Benson, this court has already held that there is not a private right of action under the FDCPA. And so if in the limited time that we have left, should we talk through the Title VII claims? Yes, Your Honor. We can do that. So, as I mentioned previously, I think, and the position we stand on is that District Court applied the wrong standard for the Title VII claims. They cite to a case that actually applies a disparate impact rather than disparate treatment claim. This court has already stated that they're not- Can we back up just for a moment to answer the question as to whether or not these claims are barred? Is there a right to sue here in the, go ahead. Yes. So we do believe there is a right to sue here. And are you referring to my previous argument about private versus state actors? With the Title VII claims, and I know that you're aware of this, before we can proceed on those, there has to be a right of sue letter issued by the EEOC. And so looking at the claims, there is an argument raised that we're barred from hearing because there was a failure to exhaust. And so I'm really asking if you could address that argument. Yes, Your Honor. So page 18 of our appellant brief begins our discussion of the exhaustion of administrative remedies. And this court has waived the requirement for the traditional exhaustion of administrative remedies where the exhaustion causes prejudice due to unreasonable delay or an indefinite amount of time. Second, the appealing through the administrative process would be futile. Or third, where substantial constitutional questions are raised. The EEOC's website itself, which we cited in our complaint, stated that the turnaround time for a decision could take many months. Here the pilots and employees of United did not have the amount of time of many months. United implement the policy, and then one month later, employees were subject to termination. Third, and as I previously discussed, substantial constitutional questions are raised in this case. The Supreme Court has repeatedly expanded and narrowed what is included in the fundamental right of the refusal to unwanted medical treatment, which is again cited in Cruzon versus Director of Missouri Department of Health, which is cited in 1990, which we cite to page 20 in our appellant brief. The pandemic was an unprecedented time in this country. The issuance of vaccines and policies that were ever-changing, it seemed like, without a doubt raised constitutional questions that were the subject of this matter. And with that, I would like to reserve the rest of my time for rebuttal, please. You may. Thank you. Thank you, Your Honors. And we welcome Mr. Magere to the podium. You can correct my pronunciation when you arrive. Good morning, Your Honors, and may it please the Court. Alexander Magere, with Jones Day on behalf of the United Airlines defendants. Your Honors, the judgment here should be affirmed for three simple reasons. First, despite three opportunities below, including an opportunity to amend their complaint after United's motion to dismiss, including after a thorough decision by Judge Cannelli outlining the deficiencies in their claims, the plaintiffs have not stated any claims against United Airlines. At bottom, as you heard this morning, discussions about the Biden administration and the federal government, the plaintiff's grievance is really against the nation's response to COVID, the COVID vaccines, as opposed to the airline. And that's why their claims do not fit the legal elements here. Which of the plaintiff's claims, if any, do you think have been properly preserved for us to address? Respectfully none, Your Honor. Each claim has forfeiture to a key element, and I'm happy to march through those. Why don't you address then the whistleblower claim? Sure. So, Your Honor, the Illinois whistleblower claim has a few problems, including forfeiture. So, first, as we argued below, the Whistleblower Act section that the plaintiffs have invoked, 740, Section 20, requires that the plaintiff be asked to participate in illegality. There's nothing illegal about obtaining the COVID vaccine. So what plaintiffs are trying to do is bootstrap alleged illegality as to United through the whistleblower statute. We cited to the text of the statute, we cited to Illinois Supreme Court precedent on that, and they did not respond below. The district judge held that they forfeited that argument. The judge also held that they forfeited any argument based on Title VII, and on appeal, with respect, it's very difficult to understand which illegality the plaintiffs are oppressing. As best as I can tell, they're trying to press some sort of a common law retaliation claim, and respectfully that's waived. I can discuss sort of why it fails on the merits, if Your Honor would like, but that claim has no merit. Unless there are other questions about the whistleblower claim, I'd like to discuss the claims that we did here this morning, as well as just make two threshold points. As I was going to say, and as Judge Pryor raised, there are many issues of forfeiture here, and it's hard to imagine a more compelling case when the court should simply affirm without reaching the merits. We've outlined all of those reasons, but those problems extend to the fact that plaintiffs' briefs on appeal do not cite the record. They don't cite the complaint, so it's impossible for the court to judge the sufficiency of  And one third point, we've talked a lot about United Airlines. The plaintiffs have tried to bring 31 individual defendants into this case. They haven't argued below or here as to how any of those individuals could possibly be liable, even if they could get over forfeiture and the problems with their claims against United. And so all claims against the individual defendants need to be affirmed. The claims that the plaintiffs relied on this morning, the EUA, as one of Your Honors mentioned, there's no private cause of action under the EUA. Even if you got over that problem, legion courts have held that a private employer can't be held responsible under the EUA because it applies to those who administer the vaccine. And there's no allegation here that United was actually injecting anyone with vaccines. As Your Honors would be familiar, this was a system where you'd go to a pharmacy or a doctor to receive the vaccine. As to the constitutional claims, they would need a Bivens cause of action. Everything you heard about state action today, again, waived. But even if it were all true and United were somehow transformed into an agent of the federal government, they need a cause of action to ground their constitutional claims. And that has to come from either an implied cause of action under Bivens or Section 1983. Under Section 1983, as the cases we cited, including from this circuit, as well as the Sirachi case in the Sixth Circuit held, all of their allegations are about the federal government. And 1983 only applies to state governments. So that claim can't get off the ground. As to Bivens, I know, Your Honor, you had an argument yesterday about Bivens. Bivens has been recognized in the Eighth Amendment, Fourth Amendment, Fifth Amendment. That's it. This is a very unusual case, which is obviously a new context under Bivens. And there hasn't been any serious argument as to why the court should recognize a cause of action. And I would submit that the constitutional claims on their merits also fail for two simple reasons. This court has already applied Jacobson to constitutional claims. That's the Klassen decision by Judge Easterbrook that we cited. As a matter of circuit precedent, the Seventh Circuit has held that Jacobson forecloses these COVID vaccine challenges. And even if you were prepared to go beyond that and try to determine whether there's some fundamental right implicit in substantive due process, Cruzan doesn't fit. Because as you heard, Cruzan is about compulsory vaccination. Excuse me. My apologies. About compulsory medical treatment. In Cruzan, it was an end-of-life decision. And the question was someone who's incapacitated. Can you force them to have food or water? Again, although the plaintiffs are claiming that this was sort of a compulsory medical treatment, it really wasn't. It was simply a requirement to keep your job. And so, again, it's a very different context. This is a COVID requirement at work. And if you didn't meet the requirement, there'd be job-related consequences. But there was no one actually forcing vaccination. Let me ask you a procedure question. Did, from your perspective, the district court sua sponte dismiss the case? No. I think it's important to address what happened here. So the district court, Judge Canelli, really bent over backwards for these plaintiffs. So first, we removed from state court. United filed a motion to dismiss. The plaintiffs asked for additional time to file their response. We're aware of the procedural history. We followed it. I'm asking, did the district court sua sponte dismiss the case? Or do you see it as pursuant to, you hadn't unfiled a second motion. You had a request in one of your responses that the court dismiss the case. But there was no new motion to dismiss. Yes. Both parties acquiesced. Judge Canelli called both parties to a telephonic conference in the way the judge suggested to proceed. And that's why I was describing the posture. United's motion to dismiss was out there. I agree. That wasn't granted. But what the district court said is, plaintiffs have come forward with an untimely motion to, or an untimely complaint. They didn't file their opposition to United's motion to dismiss on the timeline. And they submitted a complaint, which was just out of time and didn't follow the rules. So what Judge Canelli said is, I will convert that into a motion for leave. And then he went through two rounds of that. So he entered a decision that was 20 pages long that said, here are the reasons why you don't state a claim. And then said, if the plaintiffs do not file a legally sufficient claim next, I will dismiss the case with prejudice. So the plaintiffs knew that. Again, I can represent to the court because I attended them. We had telephonic conferences with plaintiffs' counsel. There was never an objection to this way of proceeding. I think it was eminently fair because the plaintiffs had, again, the benefit of United's dismissal motion. To the answer, yes. Did the district court, sua sponte, dismiss the case? I guess in a manner of speaking, yes. Your Honor, what the court determined was, I think probably the most precise way to describe what the district court said is, he would not grant them leave to amend because neither of the proposed complaints stated a claim for relief. And so because there was no case or complaint to be in front of the court, then the court said, well, I'm entering judgment for the defendants. Your Honors, we talked about exhaustion. Exhaustion, again, is an independent bar to all of the Title VII claims. And you haven't heard any substantial argument on the other side about that. I think the only argument that plaintiffs have made with respect to exhaustion is simply that the court should graft some sort of exception. Well, Congress has a very clear scheme. Exhaustion is required. Plaintiffs have admitted that not all their plaintiffs have gotten their right to sue letters. And again, they've had many, many opportunities to rectify that and have chosen not to. We'd also submit that the Title VII claims fail for the reasons that the district court gave. Unless there are other questions, Your Honor, we would request that the court affirm the judgment of dismissal. We did not touch on the invasion of privacy argument. I believe that one might have been preserved and not forfeited regarding the face mask as well as the postcards. Sure. Didn't address because plaintiffs hasn't raised it but happy to. So there actually is a forfeiture issue there. They did raise it in their... No, I'm sorry. Oh, this morning.  So there is a forfeiture problem with that in that the plaintiffs did not respond to United's argument that the postcards themselves don't disclose any private fact. So the postcards at issue simply stated that you are an individual who has not yet uploaded your vaccination records. So that would equally apply to someone who was vaccinated but hadn't yet uploaded it as well as someone who's unvaccinated. We made that argument. The plaintiffs have been crystal clear in their appellate brief that their only argument as to private fact is that vaccination status is a private fact. And so that claim can't get off the ground both because it was forfeited below on that issue but also because it's not a private fact. We'd also argue it fails on the publicity element. Again, my submission is not until their reply brief on appeal, which I think is waived, did they make this argument that fellow employees fall into this special relationship and therefore are grounds to proceed. If I could just finish my thought. Thank you, Your Honor. However, I would direct the court to the court versus Chicago Tribune case, which we cited and is cited at Plaintiff's Brief, page 23, and the Carriker versus Rent-A-Center case from the Seventh Circuit that's cited at the Appendix 121. Those cases clearly say that individuals who have a natural and proper interest to receive information can't be subject to the special relationship exception. So in other words, if an employee at United needs to know whether someone has uploaded their records, disclosing to that individual is not a public disclosure. Okay. Thank you, Mr. Malgeri. Thank you, Your Honor. Mr. Green, you had 42 seconds. We'll give you—we were asking you some questions at the end there, so two minutes. I appreciate it. Thank you, Your Honor. Starting with the Bivens claim and talking about Jacobson and Cruzano, as they just mentioned before, it's not only case law that states the principle that you have a fundamental right of the right of refusal, the right to say no when you don't want medical treatment. The option to accept or refuse is codified, as we talked about in 21 U.S.C., and the same principle of right of refusal is also embodied in the Code of Federal Regulations. Title 21 of the Code of Federal Regulations reserves an entire chapter on the protection of human beings. So let's be clear. As much as United is saying that it wasn't a compulsory program, it wasn't a forfeiture of $5, as Jacobson was. That's not compulsory. What's compulsory is get the vaccine or lose your job, lose your entire employment. Some of my clients ended up without their homes, had to forfeit their entire lives. Setting apart the voluntariness aspect, jurisdictions around the country, the 6th, the 9th, the 10th, the 11th, have begun recognizing exemptions from COVID vaccines and the vaccine mandate programs. There is no greater antithesis to reasonable accommodations than either getting the vaccine or losing your entire jobs. Touching upon in the last minute the invasion of privacy that opposing counsel had just We do believe, in fact, that there was an invasion of privacy with such delicate details such as one's vaccination status. We started this discussion on page 27 of our reply brief that private information does not need to be absolutely secret to be protected. Medical records and medical information is confidential. To access one's medical records from a doctor or facility, there are protocols that confirm one's identity. You have to sign off on consent sheets and authorization forms. Do you disagree with the connotation or the representation by counsel on the other side that the information that was focused on by you in the opening brief was on vaccination status? I do agree with opposing counsel on that fact. We do concede, as we talk about in our reply brief, that the second amended complaint does not substantively change anything from the first amended complaint. However, our position here is that we did not need to change anything substantively because there are multiple, not just one, claims for relief, which we well pleaded. In finding vaccination status, you know, they're trying to undermine how confidential...  Pardon me? Thank you. Thank you. All right. Well, we thank both attorneys and we will take the case under advisement.